PETER McGILLVRAY V. ELIAS MOSER.

1. REFEREE—*Report—Partnership—Personal Judgment—Error.* Where the report of a referee in an action of accounting between partners shows that there is property in the hands of the defendant belonging to the firm undisposed of, it is error for the court to render a personal judgment for money only against the plaintiff before the partnership affairs are fully settled, and the partnership property either divided or converted into cash.

2. ———— *Costs—Taxing.* In actions for accounting between partners, the taxation of costs lies within the sound discretion of the court.

*Error from Brown District Court.*

ACTION brought by *Peter C. McGillvray* against *Elias Moser.* In his petition he alleges that a partnership was entered into between them in 1881, at Hiawatha, for the sale of farm machinery, agricultural implements, buggies, etc., and that by mutual agreement the firm was dissolved January 1, 1883. The plaintiff asked an accounting, and that the defendant be adjudged to pay to plaintiff such sums as might appear to be justly due him, and that some proper person might be appointed by the court as receiver, to take charge of the books and collect moneys owing to said firm. After the issues were joined, the court, by the consent of the parties, referred the case to R. F. B., Esq., to hear and determine the case and report his findings of fact and conclusions of law. At the May term, 1887, he made the following report:

"1. The plaintiff and defendant entered into a copartnership under the firm-name of Moser & McGillvray, on the 11th day of April, 1881, in the city of Hiawatha, Brown county, Kansas, for the sale of farm machinery and agricultural implements, by the following written agreement:

"HIAWATHA, KANSAS, April 11, 1881.—*Moser & McGillvray.*—We, Elias Moser and P. C. McGillvray, have this day entered upon a partnership under the firm-name of Moser & McGillvray, at No. 104 Oregon street, Hiawatha, Kansas, to engage in the sale of farm machinery and agricultural implements under the following agreement:

"Elias Moser shall be the manager of the business, and shall approve of all sales made, and receipt and pay out all cash. The partners are to share equally in all losses and gains, and Mr. Moser shall be entitled

to 10 per cent. interest on all sums of money advanced by him on the account of P. C. McGillvray, from the date of its advancement until the sale is repaid. The said McGillvray also waives all rights or claims to any stocks, notes or accounts of the firm until said Moser is fully reimbursed on his investment in the business on the account of said McGillvray.

"Elias Moser, on his part, invests in the business, cash in bank, $500; P. C. McGillvray, on his part, invests in the business the following: [Open accounts and machinery and agricultural stock to the amount of $325.90.]

"2. The plaintiff and defendant carried on and did business under said agreement until the 1st day of January, 1883, when they dissolved partnership by the following written contract of dissolution:

"'This contract of dissolution of the copartnership heretofore existing between Elias Moser and P. C. McGillvray, under the name and style of Moser & McGillvray, doing business at Hiawatha, Kansas—

"'Witnesseth: That the said Moser shall take all stock on hand, the same having been inventoried in a book now in the possession of John A. Myers, with the cost price set opposite to each article, to which shall be added the freight and drayage on the same, and the whole amount shall be discounted five hundred dollars on the said property hereby inventoried, and shall be and the same is now the property of said Moser.

"'All accounts and notes belonging to said firm shall be retained by said Moser, as herein set forth. The said Moser to use reasonable diligence in collecting the same, using the firm-name for that purpose. With the proceeds of sale from the firm to himself, and the said notes and accounts as the same shall be collected, the said Moser shall discharge and pay all indebtedness of the firm, including all advances made by the said Moser over and above the amounts contributed by the said McGillvray, with interest thereon at the rate of 10 per cent. per annum.

"'And whereas, the said firm is largely liable on contracts of indorsements and guarantyship, as also is the said Moser on partnership business, therefore the said Moser shall retain from the money realized after payment of all firm indebtedness sufficient to indemnify and pay all liabilities. But if the said indemnity fund shall bring money into the hands of said Moser in any amount, then the said Moser shall pay and account for interest on the same at the rate of 12 per cent. per annum, and can use the same in his own private business. The money coming to Moser's hands after payment of the firm's indebtedness and above the said indemnity fund shall be divided equally between the said Moser and the said McGillvray. And the liability of the firm or either member thereof, arising in the partnership business, as it shall be discharged and paid, the said indemnity fund shall be lessened and divided proportionately as above. The money belonging to McGillvray on division shall be paid by said Moser to S. A. Fulton, as the agent of said McGillvray. The copartnership heretofore existing between the said Moser and the said McGillvray be and the same is hereby dissolved; and the said Moser alone closes the partnership business.

"'Books of account and notes shall be placed in the hands of J. N. Davis to post and correct, and also to ascertain the accounts of the individuals with the firm; said posting, correction and ascertaining shall be final and conclusive between the partners hereto. All notes and accounts shall be placed in the First National Bank of Hiawatha, Kansas,

for collection; and if the same shall not be paid or fully secured within thirty days after receipt by same bank, then the same bank shall turn all accounts and notes uncollected or not secured into the hands of James Falloon for collection; also, secured notes not paid at maturity and after notice shall be placed in the hands of said Falloon for collection. Said bank and said Falloon shall account to said Moser for all collections made.

"'Partnership property overlooked and not inventoried shall be sold to said Moser the same as the property inventoried.

"'Witness our hands, this 1st day of January, 1883.

ELIAS MOSER.
P. C. McGILLVRAY.

"'Witness: H. B. WAY, D. A. VANDERPOOL.'

"3. The stock on hand (machinery, implements, office furniture, etc., including freight added) of the firm of Moser & McGillvray, mentioned at time of dissolution, the sum of $5,780.02; deducting the $500 provided for in the contract of dissolution, the amount realized by the firm from the stock on hand was the sum of $5,280.02.

"4. Since the dissolution of the partnership the defendant has collected and received on notes and accounts belonging to the firm the sum of $7,888.83.

"5. Since the dissolution of the partnership the defendant had paid firm indebtedness, including expenses since dissolution, to the amount of $3,792.33.

"6. The plaintiff has drawn from the firm before and since the dissolution over and above what he has paid in to the firm the sum of $471.93.

"7. The defendant, at the time of the dissolution of the partnership, had advanced, in the years 1881 and 1882, the sum of $8,331.43 over and above what he had drawn out.

"8. The interest at ten per cent. on the amount advanced by the defendant over and above what he had drawn out of the firm amounts to $650.

"9. The defendant's account with the firm before and since the dissolution of the partnership is as follows:

| | Dr. | Cr. |
|---|---|---|
| To stock on hand, office furniture, as per inventory | $5,280 02 | |
| By cash advanced in the years 1881 and 1882 | | $8,331 42 |
| By interest on cash advanced | | 650 00 |
| To total amount collected and received since dissolution | 7,888 83 | ' |
| By amount paid on firm's indebtedness, and for expenses since dissolution | | 3,792 33 |
| Balance | | 395 09 |
| | $13,168 85 | $13,168 85 |
| To balance | 395 09 | |

"There remains on hand in the possession of the defendant

the following property, including notes and accounts not collected, which belongs to the firm: One gelding; lots 21 and 25 on Pottawatomie street, in the city of Hiawatha, Brown county, Kansas; book accounts amounting to about $900, and notes amounting to $1,205.81, exclusive of interest; also, judgments for $268.73."

"CONCLUSIONS OF LAW.

"1. The plaintiff is indebted to the defendant in the sum of $38.42.

"2. The plaintiff and defendant are each entitled to one-half interest in the partnership property now on hand."

At the November term, 1887, the court confirmed the report, and rendered judgment accordingly. The plaintiff brings the case to this court.

*C. W. Johnson,* and *Albert Perry,* for plaintiff in error.

*James Falloon,* for defendant in error.

Opinion by HOLT, C.: None of the testimony submitted to the referee is brought here, but there is a controversy concerning the opportunity or want of opportunity of the plaintiff to present a bill of exceptions to the referee before his report was filed in court. Upon this issue there is quite a voluminous amount of conflicting and contradictory testimony, which it would be profitless to discuss; it is enough to say that we shall not disturb the ruling of the district court against the plaintiff on this phase of the case, as it is upheld by some substantial evidence.

The plaintiff objected to the judgment of the court for the reason it was not supported by the report and findings of the referee, and to the taxation of all the costs against him. It appears from the findings that the plaintiff had drawn out more than his share of the *cash* proceeds of the firm, but there was still left in the defendant's hands a considerable amount of property — a horse, two lots in the city of Hiawatha, accounts, judgments, and a large number of notes. The referee found as a conclusion of law concerning this property, that each party was entitled to a one-half interest therein. No

order was asked for by either party after the referee's report was filed, to have a receiver appointed, or that the sheriff be directed to sell the property, or any other method suggested by which this property could be turned into money and the affairs of the firm closed; simply a judgment was rendered against the plaintiff for $38.42 and the costs of suit. This judgment was erroneous, and not authorized by the findings. The report itself shows, as we have suggested, that there was still in the hands of the defendant a considerable amount of property belonging to the partnership. If it had been converted into money, it is altogether probable that instead of having overdrawn the plaintiff might have had something to his credit in the hands of the defendant. Until this was disposed of there should certainly have been no personal judgment for money only against the plaintiff.

The plaintiff in his petition complains that the defendant refused to settle with him, and had failed to use diligence in collecting the debts of the firm. For all that these findings show the defendant might have collected many more of the notes and accounts, and disposed of the other property for cash. If instead of collecting nearly $8,000 he had collected only $6,000, and there had remained in his hands $2,000 worth of good notes, then a judgment against plaintiff upon the theory upon which this judgment was rendered would have been for a large amount; while on the other hand, if by using a little more activity he had collected $100 more than he did, then the judgment, instead of being against plaintiff for the amount named, would have been in his favor. In other words, the more careless and negligent he might have been in the winding-up of the business under their agreement, the more favorable the judgment would have been for him, and the more faithful and diligent he might have been, the greater probability of a judgment against him. This would have been placing a premium upon negligence, and a penalty upon diligence. The law does not tolerate such practice. For this error in disregarding in the judgment the property of the firm in the hands the defendant, and the taxation of all the costs

against the plaintiff, we recommend that the case be remanded for further proceedings; and suggest that either a receiver be appointed to take charge of the remaining property of the firm and convert it into money, or that the sheriff be directed to sell it, or such method be adopted as may be agreed upon by the parties or directed by the court, in order that all the assets of the firm may be converted into cash, and then judgment rendered as the law and evidence may warrant.

From the record brought here, the taxation of the costs is now important to the parties, and we therefore suggest that in actions of this nature the question of costs lies entirely within the sound discretion of the court. (Civil Code, § 591; *Hottenstein v. Conrad,* 9 Kas. 436.) There is nothing in the findings of the referee which would indicate that all the costs should be taxed against the plaintiff. There is nothing to show that he wished to unnecessarily prolong this litigation, or in any way obstruct the due course of procedure. Nor is there anything that shows that he dealt fraudulently with defendant. The trial court being acquainted with all the surroundings of this action and its trial before the referee, is in a position to use its discretion wisely, either in taxing all the costs against either one of the parties, or dividing them in such proportion as may seem right and equitable.

We recommend that the case be reversed.

By the Court: It is so ordered.

All the Justices concurring.