JOHN SMITH et al., *Appellees,* v. C. C. HARRIS et al.,
*Appellants.*

No. 17,616.

SYLLABUS BY THE COURT.

1. REFERENCE—*Conclusiveness of Findings of Fact.* Findings of
fact made by a referee, supported by evidence and approved
by the trial court, must stand.

2. ACCOUNTING—*Partnership—Apportionment of Costs.* In a
suit for an accounting involving the dealings and claims of
former partners the costs may be apportioned between the
parties.

3. ——— *Same.* One of three parties engaged in the joint enter-
prise of procuring, improving and handling gas-and-oil leases
and properties had two wells drilled on one of the tracts owned
by him but turned into the common holdings. *Held,* that the
cost should be borne by the parties as a common expense al-
though one of the wells was dry.

Appeal from Montgomery district court. Opinion
filed December 7, 1912. Modified.

*F. J. Fritch,* of Independence, for the appellants.

*J. P. Rossiter,* of Coffeyville, *E. J. Lambert,* and *C. G.
Sloop,* both of Independence, for the appellees.

The opinion of the court was delivered by

WEST, J.: Smith and Swan, and Harris entered into
an arrangement to deal in oil-and-gas leases and prop-
erties, and after having operated for some time sold
out their accumulations for $108,000 cash and a de-
ferred payment of $81,000, the latter being compro-
mised for $45,000. Afterwards Smith sued Harris to
recover on a note of $3000, and Swan sued to recover
on a note of $2000. Harris answered, alleging that
Smith and Swan owed him about $17,000 on account
of their former mutual dealings, that he was entitled
to a half interest, that he had assigned a portion of
his claim to his wife, Minnie Harris, and asking that

the cases be tried together. Minnie Harris was made a party and the cases were consolidated, the reply asserting that Harris' interest was one-third instead of one-half. Smith offered to confess judgment for $2415.52 and afterwards Smith and Swan offered to confess judgment for $4000. A referee was appointed, who, after a trial of great length, decided that Harris owned a third interest, and that Smith and Swan should pay the costs. In an additional report the question whether the costs should be thus decreed or divided equally among the three on the theory that the action was one for an equitable accounting was suggested. The original report was approved by the court and judgment rendered accordingly, from which the defendants, Harris and wife, appeal. A fourth party named Compton was taken into the transaction and afterwards his interest was purchased by Smith, and one of the contentions of Harris was that the purchase inured to his individual benefit; the referee, however, found that the Compton interest was purchased for the mutual benefit of Smith, Harris and Swan. The chief controversy was over the question whether Harris had a half or third interest, but the referee, after receiving a great mass of testimony on the question, decided that the interest was one-third. The plaintiff's main contentions are that Harris should be decreed to own one-half, that when the sale of the property was made certain parcels were the individual property of Harris and not of the three jointly, and that a bonus of $1652.40 paid to a certain window-glass company should be disallowed as a charge for which Harris was not in any degree responsible, and that a larger sum should be allowed as interest.

Counsel asserts that there is no finding and no evidence supporting the one-third interest theory, and that the third conclusion of law, that Harris should be credited personally with one-third of the net profits as

shown on the Smith, Swan and Harris account, is erroneous and without foundation. The eighth finding of fact was in substance that in May or June, 1904, Harris agreed with Compton that any leases thereafter taken by them should be turned into the Smith, Swan and Harris gas deal, Compton to have one-fourth interest in such leases, Harris one-fourth and Smith and Swan the other half. The ninth finding is in substance that shortly thereafter Smith was informed of this arrangement and no objections were made, and from thence leases were taken in the names of the different parties but owned by the four jointly until the sale of the Compton interest. The fiftieth finding is that the Compton interest was purchased by Smith for the benefit of himself, Swan and Harris. Finding No. 277 is that the Smith, Swan and Harris account showed on May 11, 1908, certain net proceeds and profits and that the third interest of C. C. Harris in such profits, less the amounts paid, left a balance due him of a certain named amount. It is true that these findings were none too definite and specific as to the one-third interest matter, but one of the numerous abstracts shows that Harris testified that he never made a claim of a one-half interest until December, 1907, and Smith testified that Harris never demanded a half interest until this action was begun, and in fact never made a claim for more than a third, while Swan testified that Harris agreed to a third and never before the beginning of this action claimed a half. Smith also testified that he had many conversations with Harris during 1904 and 1905, and that the latter repeatedly mentioned his interest and on August 13, 1904, he had a fourth interest, that such was their agreement, that he had several conversations with him after Compton sold out, one in particular when Harris "said that he would take one-third with us—that was our interest in the partnership funds. Harris did not say anything

only he had a third." It is said that the first 732 pages of the transcript, about one-third, are devoted to the question concerning whether the interest of Harris was one-half or one-third. And in view of the findings and testimony already indicated we are not able to say that the report which was approved by the trial court should in this respect be set aside.

It is insisted that the individual leases owned by Harris at the time of the sale did not become partnership property and that the proceeds arising from them should go to Harris individually; that there is neither finding nor evidence to the contrary. Supplemental finding No. 5 is to the effect that when the leases and pipe lines were sold on March 15, 1905, the individual leases theretofore mentioned in the report were turned in with the other leases and sold under the contract, being the interest in the Johnson, Myers, Dow, Reddins, Frost and Read leases; that it was agreed between Smith, Harris and Swan that they should be sold together with the leases owned by them jointly, and the proceeds divided and owned in the same proportion and treated as though received for leases owned by them jointly. Smith testified that they enumerated the leases that were turned in, that were already owned outside or taken outside of the partnership arrangement but turned in by mutual consent and agreement, that Compton and Harris said they would turn theirs in and each have one quarter. Harris testified that these individual leases, by common consent and general understanding, were to be a part of the gas property when built up. All that can be clearly ascertained from the bits of evidence found in the various abstracts is that this, like the question of the interest owned by Harris, was disputed; that there was conflicting evidence; that the referee took the view that the individual leases went into the partnership interest; and that the trial court adopted the same view.

A charge of $1652.40 for bonus paid to a certain window-glass company was deemed by the referee to be a partnership charge, for one-third of which Harris should be held responsible. Finding No. 284 is to the effect that it was agreed between Smith, Harris and Swan that the claim for bonus made by the window-glass company should be paid and the matter settled. Finding No. 285 is that in accordance with this agreement Smith paid the amount. Swan testified that he discussed the bonus proposition with Harris when it was asked for and that Smith discussed it with both Harris and Swan. He further testified:

"After fully discussing it, we all agreed that it would be the proper arrangement to make to agree to give the bonus of $4,000.00 worth of gas. There was a hitch afterwards as to how it should be paid. I remember the time when this $1,652.41 was paid. I brought the parties together. I went down to The Western Window Glass Company's plant and had the officers accompany me up to our office at the time the payment was made. . . . It was agreed that it should be paid and Harris agreed to it."

Whatever other evidence may have been introduced the foregoing quotation furnishes support for the finding.

The referee found that no money was paid Harris after May 1, 1908; that on or about July 8, 1908, Smith paid $5000 on the notes of Harris endorsed by Smith and Swan, and also $119 accrued interest on such notes; that on May 1, 1908, the net balance due Harris was $10,954.38; that the interest on this sum (to July 8) was $124.12, making a total of $11,078.50; that deducting the $5000 paid upon the Harris notes the balance left due was $6078.50 on July 8, 1908. Harris insists that this interest item of $124.12 should be $293.92. We do not understand how the interest on $10,954.38 from May 1 to July 8 could be computed at $293.92. The referee's computation is substantially

Smith v. Harris.

correct. Smith and Swan complain that no credit was given for the $119 interest paid on the two notes, because from the amount accrued after May 1, the referee deducted only the $5000, which was the principal of the notes without the interest. It seems that these notes were dated in October and November, 1907, and Smith and Swan assume that Harris then received the money thereon, and hence that the referee allowed Harris interest upon this amount which he had already received. It is sufficient to say that no material error as against Harris appears as to this item.

The plaintiffs also appeal and demand credit for $650 paid for the Emfield lease, $119 interest paid by Smith on the $5000 notes at the bank, $62.50 rental on the Myers lease, one-third of $1630.40 expended for drilling a dry well on the Read lease, one-third of $206.70 for gas furnished by the firm, $400 for a rig left on the Dow lease, $100 paid for the Riley lease, and complain of interest allowed Harris on his judgment prior to the filing of the stipulation for an accounting and of failure of the court to tax each of the members of the former firm with one-third of the costs. Another item of $100 which counsel frankly advises the court would be worth $100 to figure out need not be further considered.

As to the first item there was a square conflict in the testimony and therefore we can afford the plaintiffs no relief. The item of $119 interest paid on the $5000 notes at the bank appears to have been overlooked by the referee and it should be allowed. As to the credit given Harris on account of the Myers lease, we are unable to say from the record that this was improperly allowed. The claim for gas used by the firm is abandoned by the plaintiffs. The claim of $400 for a rig left on the Dow lease is not sufficiently supported to warrant its allowance. The same is true of the claim for $100 on account of the Riley lease. As

to the proposition that Harris should not be allowed interest until the stipulation for an accounting was signed, it is sufficient to say that the referee found the amount due Harris and the date thereof and no reason is offered why it should not bear interest from the time it became due. It is suggested that Harris was in fact indebted to Smith and Swan, but if so it was on account of certain Oklahoma matters which were by the stipulation not to be gone into in this litigation.

The plaintiffs insist that $1630.40, the cost of a dry well upon the Read farm, should be credited to them. This farm was one of the individual properties that Smith turned into the partnership enterprise. Two wells had been drilled thereon, one a producer and the other a dry well, costing the sum named. It appears that $231 worth of casing was drawn from this dry will, leaving the net cost $1399.40. The referee found that this well was dry and concluded that its expense should fall on Smith, who contends that it was a part of the general expense of the partnership in an attempt to make the leases productive and was of actual value as showing the limits of the gas territory on the lease in question. It appears that in June, 1904, the lease was made to Smith and T. J. Booth, each owning a half interest; that prior to October 5, the dry well was drilled and the casing removed, and on October 5 Booth paid Smith and Swan one-third of the expense of the drilling and casing; that about that time Smith purchased Booth's interest; that the lease continued to be the property of Smith and Swan until March 15, 1905; that the Harris leases on which there were no improvements were equal to the leases of Smith and Swan without the improvements; that the well in question was not an improvement; and that Smith and Swan and Harris received no benefit from its drilling.

Deducting one-third of the cost, $543.50, and the

value of the casing, $231—$774.50—the expense of the well to the enterprise was $855.90. There seems to be no claim that this expense was not incurred in good faith, and the plaintiffs should have credit therefor.

The plaintiffs contend that the voluminous record and great costs of this litigation resulted principally from the refusal of Harris to concede that he was entitled to only a third interest, and that according to the statement of the referee about one-third of the testimony was directed to this point; that had he conceded what was afterwards found to be the fact concerning his interest this litigation could have been avoided, and that he should be required to bear the expense thus needlessly incurred. There is nothing in the record to show that the claim of Harris as to a half interest was without support or that a concession on his part that he was a third owner would have avoided the litigation. After Harris filed his cross-petition in the actions on the notes the parties stipulated to try the entire matter as an accounting, and in view of the conflicting claims and the amount of testimony introduced we think the suggestion of the referee that the costs be borne equally by Smith, Swan and Harris should have been followed. (Civ. Code, § 615; *McGillvray v. Moser*, 43 Kan. 219, 23 Pac. 96.)

The judgment is therefore modified in accordance with these views and in the respects heretofore indicated, the costs in this court to be similarly divided.